**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Elton Eugene EVANS, Defendant–Appellee.**

**No. 96CA1541.**

Colorado Court of Appeals, Div. IV.

Feb. 5, 1998.

Rehearing Denied March 19, 1998.

---

Certiorari Denied Feb. 16, 1998.*

---

* Justice MARTINEZ and Justice BENDER would grant as to the following issues:

Whether the court of appeals erred in holding that an inmate's request for speedy trial under the Interstate Agreement on Detainers is ineffectual, where the request is in substantial compliance with Article III, officials in Receiving State have actual notice of the request, and the inmate's failure to comply strictly is the result of custodial official's nonfeasance.

Whether the court of appeals erred and violated the explicit holding of *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), by refusing to acknowledge that because, (1) the prosecution filed a detainer, and (2) transferred Mr. Evans from federal custody in Minnesota to Colorado on a governmental writ, the 120-day speedy trial clock commenced running under Article IV of the Interstate Agreement on Detainers.

James J. Peters, District Attorney, James C. Sell, Chief Deputy District Attorney, John Topolnicki, Chief Deputy District Attorney, Englewood, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, for Defendant–Appellee.

Opinion by Judge ROY.

The People appeal from the trial court's judgment dismissing the charges against the defendant, Elton Eugene Evans, based on his not having been brought to trial within the limitation period specified in the Interstate Agreement on Detainers Act (IAD), § 24–60–501, et seq., C.R.S.1997. We reverse the dismissal and remand with directions to reinstate the charges.

In May 1993, defendant was charged in Arapahoe County with unlawful possession of a controlled substance, possession with the intent to distribute marihuana, conspiracy to commit unlawful distribution of marihuana, possession of cocaine, and a special offender count based on his possession of a deadly weapon. Federal charges were filed against the defendant arising out of the same crimi-nal episode that gave rise to the Arapahoe County charges. Defendant pled guilty to the federal charges and was sentenced to a federal prison.

While defendant was serving his federal sentence in a federal correctional facility in Colorado, the Arapahoe County District Attorney filed a detainer. Defendant was advised by federal prison officials in writing of the existence of the detainer and his rights under the IAD. More particularly, defendant was advised that, pursuant to the IAD, he had a right to request final disposition of the outstanding charges against him and that he must notify the Inmate Systems Manager of his intent to exercise that right.

Defendant, without notifying the prison authorities as contemplated by the IAD and the advisement, instead filed a document in Arapahoe County entitled "Motion For Speedy Trial Or For Dismissal of Charges" in which he identified himself. as a federal prisoner and requested a speedy disposition of the outstanding charges. At the same time, defendant filed a motion for appointment of counsel. No action was taken with respect to either motion.

Defendant subsequently filed two identical motions to dismiss based on a violation of his speedy trial rights under the IAD, maintaining that the speedy trial period began to run upon the filing of the above-described document. Upon concluding that defendant had substantially complied with the provisions of the IAD and that his right to a speedy disposition had been violated, the trial court dismissed the pending charges.

I.

▮ The People contend on appeal that strict rather than substantial compliance was required in order to trigger the IAD 180–day speedy trial requirement. We agree.

The IAD requires that the prisoner deliver to a custodial official at the institution in which he or she is incarcerated a written notice and request for final disposition of the outstanding charges pending against him or her. Section 24–60–501(III)(b), C.R.S.1997. The custodial official must then forward to the appropriate court and prosecuting official

the prisoner's request for a final disposition, together with a certification containing information regarding the prisoner's current incarceration. Section 24–60–501(III)(a), C.R.S.1997. If all of these procedures are followed, the prisoner must be brought to trial within 180 days. Section 24–60–501(III)(a), C.R.S.1997. There is no dispute that the filing of the motion by defendant did not comply with the procedural framework of the IAD.

■ Since the trial court's ruling in this case, our supreme court held that, in order to implicate the speedy trial provisions of the IAD, strict compliance with that statute's procedures is required. *Johnson v. People*, 939 P.2d 817 (Colo.1997). That holding is dispositive of the issue, and, absent some basis for excusing defendant's failure strictly to comply, it requires that the dismissal be reversed and the cause remanded for reinstatement of the charges.

### II.

Defendant argues in support of the trial court's ruling that even if his motion was not sufficient to trigger the speedy trial protections of the IAD, nonetheless, dismissal of the charges is required because of the alleged failure of the federal prison authorities to comply with his request. We are not persuaded.

In *Romans v. District Court*, 633 P.2d 477 (Colo.1981), our supreme court ordered the dismissal of charges against a prisoner because the federal prison officials failed promptly to notify him of the Colorado detainer and, after notifying him, failed to advise him of his rights to an immediate resolution of the detainer. The court reasoned that provisions of IAD are mandatory and that any adverse effects of official oversight should be visited on the prosecution and not the prisoner. *See also People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979).

■ A contrary result was reached, however, in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), in which the issue was whether the speedy trial provision of the IAD commences to run upon the prisoner's request to the prison officials or the delivery of the demand for final disposition to the court and prosecuting attorney.

The Supreme Court held that the risk of the malfeasance, or even malicious acts, of the prison officials must be borne by the defendant and that the speedy trial provision of IAD was not triggered until receipt by the court and prosecuting attorney of the prisoner's demand for final disposition. The court's rationale was that, were the contrary true, the speedy trial limitation would run without either the court or the prosecutor being aware that the time had commenced. The interpretation of the IAD is governed by federal law. *People v. Moody*, 676 P.2d 691 (Colo.1984). We are, therefore, constrained to follow *Fex v. Michigan, supra*, rather than *Romans v. District Court, supra*, and, hence, conclude that the defendant must bear the risk of uncooperative or inept prison officials.

### III.

Defendant argues further that, even if his motion was not sufficient to trigger the speedy trial provisions of the IAD, dismissal of the charges is still mandated by the trial court's failure to appoint counsel as requested at the time he filed his initial request. Again, we disagree.

■ Right to counsel attaches once an adversarial or judicial proceeding has been commenced, such as the filing of a criminal information or indictment. *People v. Anderson*, 842 P.2d 621 (Colo.1992); *People v. Palmer*, 888 P.2d 348 (Colo.App.1994). Thereafter, a defendant has a right to counsel at every critical stage of a criminal proceeding. A stage is "critical" if there is even a minimal risk that the absence of counsel might impair the defendant's constitutional right to a fair trial. *Key v. People*, 865 P.2d 822 (Colo.1994).

[7, 8] The benefits and protections of the IAD are statutory and not of constitutional dimension. *See People v. Brown*, 854 P.2d 1332 (Colo.App.1992). We are not aware of any authority for the proposition that a defendant has the right to court-appointed counsel to assist in perfecting any statutory rights accorded by the IAD. We therefore conclude that the filing of a detainer against an incarcerated defendant is not a critical stage of the proceedings which implicates the defendant's right to court-appointed counsel at public expense.

In addition, it is apparent that defendant's motion for appointment of counsel was designed to obtain counsel to assist him in taking advantage of the IAD and not for general representation with respect to the underlying charges. Had counsel been appointed, it is not certain that he or she would have recommended that the defendant avail himself of the speedy disposition provisions of the IAD. Further, we must presume that trial would have been commenced in a timely manner had appointed counsel perfected defendant's rights to a speedy disposition of the detainer. Therefore, we cannot say with any assurance on this record that the failure to appoint counsel affected any substantial right of the defendant, and we decline to speculate in that regard.

We conclude the trial court did not err in failing to appoint counsel to assist defendant in perfecting his speedy disposition rights under the IAD.

### IV.

Finally, defendant argues that, even if his motion was insufficient to trigger the speedy disposition of the detainer, the district court's ruling should be upheld because he was also entitled to dismissal of the charges pursuant to § 24–60–501(IV), C.R.S.1997, of the IAD.

While this claim was not specifically argued before the trial court and the trial court's ruling did not address this IAD provision, the claim is within the scope of defendant's broadly worded pleadings. Hence, in the interest of judicial efficiency, we address and, on the record before us, reject defendant's contention.

Section 24–60–501(IV)(b), C.R.S.1997, provides that the prosecutor in a jurisdiction in which charges are pending can initiate proceedings to gain temporary custody of the defendant for the purposes of trial, and, in the event custody is obtained, trial must commence within 120 days of defendant's arrival in the jurisdiction.

The record indicates that the Arapahoe County District Attorney attempted to obtain custody of the defendant pursuant to § 24–60–501(IV). These attempts were unsuccessful because of defendant's significant health problems, which required his removal to Minnesota for treatment. There is no requirement under the IAD that the prosecuting jurisdiction seek custody of an incarcerated defendant in order to prosecute him or her.

The record also reflects that, in this instance, custody was obtained following the discharge of defendant's federal sentence pursuant to the outstanding arrest warrant. In our view, the defendant, having completely served his federal sentence, is no longer eligible for the speedy disposition provisions accorded by the IAD. *See United States v. Saffeels*, 982 F.2d 1199 (8th Cir.1992), *vacated on other grounds*, 510 U.S. 801, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993); *United States v. Roy*, 830 F.2d 628 (7th Cir.1987); *Commonwealth v. Koutras*, No. 9773CR0073A–C (Mass.Super. July 8, 1997) (1997 WL 399842); Annot., 98 A.L.R.3d 160 at 185 § 5(d) (1980) (IAD protections apply only to those currently serving a term of imprisonment).

The judgment of dismissal is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

NEY and MARQUEZ, JJ., concur.