22CA0551 Peo v Vigil 11-14-2024 modified

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0551
Jefferson County District Court No. 97CR1195
Honorable Tamara S. Russell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Frank Vigil, Jr.,

Defendant-Appellant.

SENTENCE AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

Opinion Modified
on the Court's Own Motion
Petition for Rehearing DENIED

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Kathleen A. Lord, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

OPINION is modified as follows:

**Page 2, ¶ 2 currently reads:**

His convictions were the result of his participation in the kidnapping, rape, torture, and murder of a fourteen-year-old girl.

**Opinion now reads:**

His convictions were the result of his participation in the kidnapping, torture, and murder of a fourteen-year-old girl.

¶ 1     Defendant, Frank Vigil, Jr. (Vigil), appeals the district court's order resentencing him to life with the possibility of parole (LWPP) after forty years for his after deliberation first degree murder conviction for a crime he committed as a juvenile. He contends that the district court erred because, under the statute, his conviction for felony murder, in addition to after deliberation murder, gave the court discretion to sentence him to a determinate sentence of thirty to fifty years. In the alternative, he argues that the sentencing statute is ambiguous and that the concept of "maximizing the jury verdict" should not apply to juvenile sentencing schemes. We conclude that the district court properly interpreted the plain language of the statute, and that, even if the statute is ambiguous, the legislative history supports the district court's interpretation. Therefore, we affirm his sentence.

## I.     Background

¶ 2     In February 1998, Vigil, who was sixteen at the time, was convicted of first degree felony murder and first degree after deliberation murder, among other crimes. At the time of his conviction, after deliberation murder and felony murder were class 1 felonies. Vigil's felony murder conviction was merged with the

1

after deliberation murder count. His convictions were the result of his participation in the kidnapping, torture, and murder of a fourteen-year-old girl. Vigil was sentenced to a mandatory sentence of life without the possibility of parole (LWOP).

¶ 3     But in *Miller v. Alabama*, 567 U.S. 460, 489 (2012), the United States Supreme Court held that imposing a mandatory LWOP sentence on a juvenile who commits murder violates the Eighth Amendment's ban on cruel and unusual punishment. And later, the Supreme Court announced that *Miller*'s holding should be applied retroactively. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

¶ 4     In response to *Miller* and *Montgomery*, the General Assembly in 2016 passed a framework for courts to resentence juveniles unconstitutionally sentenced to LWOP. *See* § 18-1.3-401(4)(c)(I) to -(c)(IV), C.R.S. 2024.

¶ 5     In 2022, Vigil availed himself of his statutory right to be resentenced. After a two-day hearing, the district court resentenced

Vigil to LWPP after forty years less earned time for his after deliberation murder conviction.[1]

## II. Standard of Review and Applicable Law

¶ 6  Whether a district court has the authority to impose a particular sentence is a question of statutory interpretation we review de novo. *People v. Lowe*, 2021 CO 51, ¶ 13.

¶ 7  Our main goal when interpreting any statute is to give effect to the General Assembly's intent. *People v. Reyes*, 2016 COA 98, ¶ 8. To do so, we first look to the statute's plain language. *Id.* When a statute is "part of a complex of sentencing prescriptions, the entire scheme should be construed to give consistent, harmonious, and sensible effect to all its parts." *Id.* (citation omitted).

## III. Analysis

¶ 8  Section 18-1.3-401(4)(c)(I) authorizes courts to resentence juveniles who were (1) convicted of a class 1 felony as a result of a direct file or transfer of an offense committed on or after July 1, 1990, and before July 1, 2006, or (2) sentenced to mandatory

---

[1] Because Vigil challenged his sentences as being illegal for other convictions, the court held a two-day hearing. Vigil only appeals his sentence of LWPP for after deliberation murder.

3

LWOP.  As of 2018, our supreme court estimated that there were fifty people serving sentences who fell under the statute.  *People v. Brooks*, 2018 CO 77, ¶ 13.[2]

¶ 9    The statute divides those individuals into two groups.  Section 18-1.3-401(4)(c)(I)(A) includes individuals serving mandatory LWOP sentences for felony murder committed as juveniles (felony murder group).  Individuals in this group can be sentenced either to a determinate sentence of thirty to fifty years (if the court finds extraordinary mitigating circumstances) or to a term of life imprisonment with the possibility of parole after forty years.  *Id.*

¶ 10    The second group in section 18-1.3-401(4)(c)(I)(B) comprise individuals serving mandatory LWOP sentences for class 1 felonies other than felony murder (any other class 1 felony group).  In other words, the second group comprises those juveniles who committed any other form of first degree murder.  *Brooks*, ¶ 13.  The any other class 1 felony group must be sentenced to a term of LWPP after forty years.  § 18-1.3-401(4)(c)(I)(B).  Also, this group is not entitled

---

[2] *People v. Brooks*, 2018 CO 77, ¶¶ 30-31, indicated that the individuals who fall under the statute might increase due to a solved "cold case" or because of postconviction relief.

to a hearing before the district court on mitigating circumstances for a determinate sentence of thirty to fifty years. *Id.*[3]

---

[3] Section 18-1.3-401(4)(c)(I)(A)-(B) states as follows:

(c)(I) Notwithstanding subsections (1)(a)(V)(A), (4)(a), and (4)(b) of this section, as to a person who is convicted as an adult of a class 1 felony following a direct filing of an information or indictment in the district court pursuant to section 19-2.5-801, or transfer of proceedings to the district court pursuant to section 19-2.5-802, or pursuant to either of these sections as they existed prior to their repeal and reenactment, with amendments, by House Bill 96-1005, which felony was committed on or after July 1, 1990, and before July 1, 2006, and who received a sentence to life imprisonment without the possibility of parole:

(A) If the felony for which the person was convicted is murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to September 15, 2021, then the district court, after holding a hearing, may sentence the person to a determinate sentence within the range of thirty to fifty years in prison, less any earned time granted pursuant to section 17-22.5-405, if, after considering the factors described in subsection (4)(c)(II) of this section, the district court finds extraordinary mitigating circumstances. Alternatively, the court may sentence the person to a term of life imprisonment with the possibility of parole after serving forty years, less any earned time granted pursuant to section 17-22.5-405.

(B) If the felony for which the person was convicted is not murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to September 15, 2021, then the district court shall sentence the person to a term of life imprisonment with the possibility of parole after serving forty years, less any earned time granted pursuant to section 17-22.5-405.

¶ 11    Application of the sentencing alternatives depends on whether a defendant was convicted of felony murder or of any other class 1 felony.  But Vigil contends that he fits in both groups because he was convicted of both after deliberation murder and felony murder. He posits that because the statute does not explicitly guide courts on the application of the statute for individuals with multiple convictions, he is entitled to fall under the felony murder group. Thus, he argues, he is eligible to prove mitigating circumstances with the possibility of a determinate sentence under section 18-1.3-401(4)(c)(I)(A).

¶ 12    In disagreeing with Vigil, the district court determined that he could be resentenced only to LWPP because his felony murder conviction merged into the after deliberation murder; therefore he fell into the other class 1 felony group.  The court rejected Vigil's argument that vacating his after deliberation murder conviction would maximize the jury verdict.  Instead, it concluded that after deliberation murder was the proper conviction to apply to Vigil's resentencing, as it was the greater offense.

¶ 13    We agree with the district court's interpretation and application of section 18-1.3-401(4)(c)(I) for five reasons.

¶ 14    First, we reject Vigil's argument that sub-subparagraph "(A) is not written in exclusive terms." Vigil seeks an interpretation that an individual does not have to be solely convicted of felony murder to fall within the felony murder group; rather, that sub-subparagraph (A) applies if there is *any* conviction for felony murder. But we agree with the Attorney General that for Vigil to fall outside of the any other class 1 felony group, his conviction for after deliberation murder would need to be vacated because as long as that conviction stands, he was convicted of a class 1 felony that was not felony murder. *See* § 18-1.3-401(4)(c)(I)(B). That conviction remains in effect.

¶ 15    Second, although dicta, *Brooks* contemplated a hypothetical situation similar to Vigil's circumstance: a juvenile charged as an adult and convicted of both after deliberation murder and felony murder for acts committed on or after July 1, 1990, and before July 1, 2006. *Brooks*, ¶ 33. In that situation, the supreme court contemplated that a district court could have entered judgment on a generic count of murder or on a single count of murder after deliberation and then sentenced the juvenile to LWOP. *Id.* A juvenile in those circumstances could then seek postconviction

relief to invalidate his prior conviction, and the juvenile might prevail with an amended judgment reflecting a conviction for felony murder. *Id.* Such an individual would then qualify for a possible determinate sentence under section 18-1.3-401(4)(c)(I)(A). *Brooks*, ¶ 33.

¶ 16    The *Brooks* hypothetical contemplates that for a defendant with both types of convictions to be eligible for the felony murder group, the court would need to vacate the after deliberation murder conviction to leave only a conviction of felony murder. This is not Vigil's situation. He does not challenge, in this appeal or otherwise, his after deliberation murder conviction.

¶ 17    Third, Vigil concedes, and we agree, that his convictions for felony murder and after deliberation murder cannot both stand. Our supreme court has held that under the "judicially created rule of merger 'outside the context' of a lesser included offense analysis," a defendant's convictions for those two offenses must be merged, as it violates double jeopardy if there is a single murder victim. *Thomas v. People*, 2021 CO 84, ¶ 31; *see also People v. Lowe*, 660 P.2d 1261, 1269 (Colo. 1983) (concluding that a person could not be convicted of two murder convictions for a single victim because

the legislature had not manifested "any clear intent that a defendant could be convicted of more than one kind of first-degree murder where there is but one victim"), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo. 1984).

¶ 18    But importantly, even if two murder convictions merge because of a single victim, "the trial court should be directed to enter as many convictions and impose as many sentences as are legally possible to fully effectuate the jury's verdict." *Thomas*, ¶ 54 (quoting *People v. Glover*, 893 P.2d 1311, 1315 (Colo. 1995)). Therefore, the original trial court and resentencing court were correct in merging felony murder into after deliberation murder, as it is the greater offense. *See People v. Wood*, 2019 CO 7, ¶ 29 ("[B]y merging the two murder convictions and imposing a single sentence for first-degree murder, the state district court necessarily vacated the conviction for second-degree murder, thereby avoiding multiplicitous convictions.").

¶ 19    Fourth, separate but related to the third reason, the legislative history of the resentencing statute supports that felony murder is a lesser offense than after deliberation murder. Although we generally do not resort to the canons of statutory construction when

9

we, as here, determine the statute is unambiguous, we do so in this instance because Vigil contends the statute is ambiguous. *See Educhildren LLC v. Cnty. of Douglas Bd. of Equalization*, 2023 CO 29, ¶ 27 (When the language of a statute is ambiguous, a court employs the "tools of statutory interpretation, considering factors such as 'the consequences of a given construction, the end to be achieved by the statute, and legislative history.'") (citation omitted).

¶ 20    In originally distinguishing between felony murder and after deliberation murder in section 18-1.3-401(4)(c)(I)(A) and (B) — when both were class 1 felonies — the General Assembly likely made "a policy judgment that a juvenile's conviction for felony murder may warrant a lesser penalty than a conviction for a different class 1 felony." *Brooks*, ¶ 52. *Brooks*' supposition manifested into *the policy* judgment of the General Assembly when that body reclassified felony murder and amended section 18-1.3-401(4)(c)(I).

¶ 21    Before September 15, 2021, when felony murder was a class 1 felony, § 18-3-102(1)(b), (3), C.R.S. 2019, the offense was described as "[a]cting either alone or with one or more persons, he or she commits or attempts to commit" various felony offenses "and, in the course of or in furtherance of the crime that he or she is committing

or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone." Effective September 15, 2021, the General Assembly repealed section 18-3-102(1)(b), retaining the same offense elements of felony murder, but reclassifying it as murder in the second degree, a class 2 felony. Ch. 58, secs. 1-2, §§ 18-3-102, 18-3-103, 2021 Colo. Sess. Laws 235-36. This reclassification was the result of the General Assembly considering it unjust to mandate the harshest punishment available for someone "when the death of a person is caused by a participant without deliberation in the course of the commission of specified felony offenses." 2021 Colo. Sess. Laws at 235.

¶ 22     The General Assembly simultaneously amended section 18-1.3-401(4)(c)(I)(A) to say, "If the felony for which the person was convicted is murder in the first degree, *as described in section 18-3-102(1)(b), as it existed prior to [September 15, 2021]*, then the district court, after holding a hearing, may sentence the person to a determinate sentence . . . ." (Emphasis added.) Sec. 4, § 18-1.3-401, 2021 Colo. Sess. Laws at 237-38. In other words, for resentencing of juveniles who received LWOP, the court is to

consider felony murder as it existed as a class 1 felony but nonetheless treat it differently. Likewise, section 18-1.3-401(4)(c)(I)(B) contains similar language, noting that provision applies to individuals "for which the person was convicted is *not* murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to [September 15, 2021]." 2021 Colo. Sess. Laws at 238.

¶ 23    These legislative amendments distinguish between (a) individuals who were convicted of felony murder when the death of a person was caused *without* deliberation and (b) individuals convicted of *deliberate* murder. Vigil was convicted of after deliberation murder. Although his felony murder conviction was previously classified as first degree murder, this does not change the fact that these are two separate crimes and one must merge into the other because there was a single victim. His interpretation of the statute that felony murder and after deliberation murder are interchangeable is contrary to the legislative intent; instead, the former may receive a determinate sentence (with proof of mitigating circumstances), whereas the latter may not.

¶ 24    Fifth and finally, the Attorney General contends, and we agree, that nothing in *Miller* or the post-*Miller* sentencing scheme suggests that maximizing the sentence for a juvenile is inappropriate or unconstitutional. Even though the juvenile justice system is primarily intended to be rehabilitative instead of punitive, this does not mean that we should not effectuate a jury's verdict, especially when Vigil has not cited, nor are we aware of, any Colorado authority that treats multiplicity issues differently in the juvenile system.

## IV.    Conclusion

¶ 25    The sentence is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.

13

22CA0551 Peo v Vigil 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0551
Jefferson County District Court No. 97CR1195
Honorable Tamara S. Russell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Frank Vigil, Jr.,

Defendant-Appellant.

SENTENCE AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Kathleen A. Lord, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Frank Vigil, Jr. (Vigil), appeals the district court's order resentencing him to life with the possibility of parole (LWPP) after forty years for his after deliberation first degree murder conviction for a crime he committed as a juvenile. He contends that the district court erred because, under the statute, his conviction for felony murder, in addition to after deliberation murder, gave the court discretion to sentence him to a determinate sentence of thirty to fifty years. In the alternative, he argues that the sentencing statute is ambiguous and that the concept of "maximizing the jury verdict" should not apply to juvenile sentencing schemes. We conclude that the district court properly interpreted the plain language of the statute, and that, even if the statute is ambiguous, the legislative history supports the district court's interpretation. Therefore, we affirm his sentence.

## I.     Background

¶ 2     In February 1998, Vigil, who was sixteen at the time, was convicted of first degree felony murder and first degree after deliberation murder, among other crimes. At the time of his conviction, after deliberation murder and felony murder were class 1 felonies. Vigil's felony murder conviction was merged with the

1

after deliberation murder count. His convictions were the result of his participation in the kidnapping, rape, torture, and murder of a fourteen-year-old girl. Vigil was sentenced to a mandatory sentence of life without the possibility of parole (LWOP).

¶ 3      But in *Miller v. Alabama*, 567 U.S. 460, 489 (2012), the United States Supreme Court held that imposing a mandatory LWOP sentence on a juvenile who commits murder violates the Eighth Amendment's ban on cruel and unusual punishment. And later, the Supreme Court announced that *Miller*'s holding should be applied retroactively. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

¶ 4      In response to *Miller* and *Montgomery*, the General Assembly in 2016 passed a framework for courts to resentence juveniles unconstitutionally sentenced to LWOP. *See* § 18-1.3-401(4)(c)(I) to -(c)(IV), C.R.S. 2024.

¶ 5      In 2022, Vigil availed himself of his statutory right to be resentenced. After a two-day hearing, the district court resentenced

Vigil to LWPP after forty years less earned time for his after deliberation murder conviction.[1]

## II. Standard of Review and Applicable Law

¶ 6 Whether a district court has the authority to impose a particular sentence is a question of statutory interpretation we review de novo. *People v. Lowe*, 2021 CO 51, ¶ 13.

¶ 7 Our main goal when interpreting any statute is to give effect to the General Assembly's intent. *People v. Reyes*, 2016 COA 98, ¶ 8. To do so, we first look to the statute's plain language. *Id.* When a statute is "part of a complex of sentencing prescriptions, the entire scheme should be construed to give consistent, harmonious, and sensible effect to all its parts." *Id.* (citation omitted).

## III. Analysis

¶ 8 Section 18-1.3-401(4)(c)(I) authorizes courts to resentence juveniles who were (1) convicted of a class 1 felony as a result of a direct file or transfer of an offense committed on or after July 1, 1990, and before July 1, 2006, or (2) sentenced to mandatory

---

[1] Because Vigil challenged his sentences as being illegal for other convictions, the court held a two-day hearing. Vigil only appeals his sentence of LWPP for after deliberation murder.

3

LWOP. As of 2018, our supreme court estimated that there were fifty people serving sentences who fell under the statute. *People v. Brooks*, 2018 CO 77, ¶ 13.[2]

¶ 9 The statute divides those individuals into two groups. Section 18-1.3-401(4)(c)(I)(A) includes individuals serving mandatory LWOP sentences for felony murder committed as juveniles (felony murder group). Individuals in this group can be sentenced either to a determinate sentence of thirty to fifty years (if the court finds extraordinary mitigating circumstances) or to a term of life imprisonment with the possibility of parole after forty years. *Id.*

¶ 10 The second group in section 18-1.3-401(4)(c)(I)(B) comprise individuals serving mandatory LWOP sentences for class 1 felonies other than felony murder (any other class 1 felony group). In other words, the second group comprises those juveniles who committed any other form of first degree murder. *Brooks*, ¶ 13. The any other class 1 felony group must be sentenced to a term of LWPP after forty years. § 18-1.3-401(4)(c)(I)(B). Also, this group is not entitled

---

[2] *People v. Brooks*, 2018 CO 77, ¶¶ 30-31, indicated that the individuals who fall under the statute might increase due to a solved "cold case" or because of postconviction relief.

4

to a hearing before the district court on mitigating circumstances for a determinate sentence of thirty to fifty years. *Id.*[3]

---

[3] Section 18-1.3-401(4)(c)(I)(A)-(B) states as follows:

(c)(I) Notwithstanding subsections (1)(a)(V)(A), (4)(a), and (4)(b) of this section, as to a person who is convicted as an adult of a class 1 felony following a direct filing of an information or indictment in the district court pursuant to section 19-2.5-801, or transfer of proceedings to the district court pursuant to section 19-2.5-802, or pursuant to either of these sections as they existed prior to their repeal and reenactment, with amendments, by House Bill 96-1005, which felony was committed on or after July 1, 1990, and before July 1, 2006, and who received a sentence to life imprisonment without the possibility of parole:

(A) If the felony for which the person was convicted is murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to September 15, 2021, then the district court, after holding a hearing, may sentence the person to a determinate sentence within the range of thirty to fifty years in prison, less any earned time granted pursuant to section 17-22.5-405, if, after considering the factors described in subsection (4)(c)(II) of this section, the district court finds extraordinary mitigating circumstances. Alternatively, the court may sentence the person to a term of life imprisonment with the possibility of parole after serving forty years, less any earned time granted pursuant to section 17-22.5-405.

(B) If the felony for which the person was convicted is not murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to September 15, 2021, then the district court shall sentence the person to a term of life imprisonment with the possibility of parole after serving forty years, less any earned time granted pursuant to section 17-22.5-405.

5

¶ 11    Application of the sentencing alternatives depends on whether a defendant was convicted of felony murder or of any other class 1 felony.  But Vigil contends that he fits in both groups because he was convicted of both after deliberation murder and felony murder.  He posits that because the statute does not explicitly guide courts on the application of the statute for individuals with multiple convictions, he is entitled to fall under the felony murder group.  Thus, he argues, he is eligible to prove mitigating circumstances with the possibility of a determinate sentence under section 18-1.3-401(4)(c)(I)(A).

¶ 12    In disagreeing with Vigil, the district court determined that he could be resentenced only to LWPP because his felony murder conviction merged into the after deliberation murder; therefore he fell into the other class 1 felony group.  The court rejected Vigil's argument that vacating his after deliberation murder conviction would maximize the jury verdict.  Instead, it concluded that after deliberation murder was the proper conviction to apply to Vigil's resentencing, as it was the greater offense.

¶ 13    We agree with the district court's interpretation and application of section 18-1.3-401(4)(c)(I) for five reasons.

¶ 14    First, we reject Vigil's argument that sub-subparagraph "(A) is not written in exclusive terms." Vigil seeks an interpretation that an individual does not have to be solely convicted of felony murder to fall within the felony murder group; rather, that sub-subparagraph (A) applies if there is *any* conviction for felony murder. But we agree with the Attorney General that for Vigil to fall outside of the any other class 1 felony group, his conviction for after deliberation murder would need to be vacated because as long as that conviction stands, he was convicted of a class 1 felony that was not felony murder. *See* § 18-1.3-401(4)(c)(I)(B). That conviction remains in effect.

¶ 15    Second, although dicta, *Brooks* contemplated a hypothetical situation similar to Vigil's circumstance: a juvenile charged as an adult and convicted of both after deliberation murder and felony murder for acts committed on or after July 1, 1990, and before July 1, 2006. *Brooks*, ¶ 33. In that situation, the supreme court contemplated that a district court could have entered judgment on a generic count of murder or on a single count of murder after deliberation and then sentenced the juvenile to LWOP. *Id.* A juvenile in those circumstances could then seek postconviction

relief to invalidate his prior conviction, and the juvenile might prevail with an amended judgment reflecting a conviction for felony murder. *Id.* Such an individual would then qualify for a possible determinate sentence under section 18-1.3-401(4)(c)(I)(A). *Brooks*, ¶ 33.

¶ 16 The *Brooks* hypothetical contemplates that for a defendant with both types of convictions to be eligible for the felony murder group, the court would need to vacate the after deliberation murder conviction to leave only a conviction of felony murder. This is not Vigil's situation. He does not challenge, in this appeal or otherwise, his after deliberation murder conviction.

¶ 17 Third, Vigil concedes, and we agree, that his convictions for felony murder and after deliberation murder cannot both stand. Our supreme court has held that under the "judicially created rule of merger 'outside the context' of a lesser included offense analysis," a defendant's convictions for those two offenses must be merged, as it violates double jeopardy if there is a single murder victim. *Thomas v. People*, 2021 CO 84, ¶ 31; *see also People v. Lowe*, 660 P.2d 1261, 1269 (Colo. 1983) (concluding that a person could not be convicted of two murder convictions for a single victim because

the legislature had not manifested "any clear intent that a defendant could be convicted of more than one kind of first-degree murder where there is but one victim"), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo. 1984).

¶ 18     But importantly, even if two murder convictions merge because of a single victim, "the trial court should be directed to enter as many convictions and impose as many sentences as are legally possible to fully effectuate the jury's verdict." *Thomas*, ¶ 54 (quoting *People v. Glover*, 893 P.2d 1311, 1315 (Colo. 1995)). Therefore, the original trial court and resentencing court were correct in merging felony murder into after deliberation murder, as it is the greater offense. *See People v. Wood*, 2019 CO 7, ¶ 29 ("[B]y merging the two murder convictions and imposing a single sentence for first-degree murder, the state district court necessarily vacated the conviction for second-degree murder, thereby avoiding multiplicitous convictions.").

¶ 19     Fourth, separate but related to the third reason, the legislative history of the resentencing statute supports that felony murder is a lesser offense than after deliberation murder. Although we generally do not resort to the canons of statutory construction when

we, as here, determine the statute is unambiguous, we do so in this instance because Vigil contends the statute is ambiguous. *See Educhildren LLC v. Cnty. of Douglas Bd. of Equalization*, 2023 CO 29, ¶ 27 (When the language of a statute is ambiguous, a court employs the "tools of statutory interpretation, considering factors such as 'the consequences of a given construction, the end to be achieved by the statute, and legislative history.'") (citation omitted).

¶ 20    In originally distinguishing between felony murder and after deliberation murder in section 18-1.3-401(4)(c)(I)(A) and (B) — when both were class 1 felonies — the General Assembly likely made "a policy judgment that a juvenile's conviction for felony murder may warrant a lesser penalty than a conviction for a different class 1 felony." *Brooks*, ¶ 52. *Brooks'* supposition manifested into *the policy* judgment of the General Assembly when that body reclassified felony murder and amended section 18-1.3-401(4)(c)(I).

¶ 21    Before September 15, 2021, when felony murder was a class 1 felony, § 18-3-102(1)(b), (3), C.R.S. 2019, the offense was described as "[a]cting either alone or with one or more persons, he or she commits or attempts to commit" various felony offenses "and, in the course of or in furtherance of the crime that he or she is committing

or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone." Effective September 15, 2021, the General Assembly repealed section 18-3-102(1)(b), retaining the same offense elements of felony murder, but reclassifying it as murder in the second degree, a class 2 felony. Ch. 58, secs. 1-2, §§ 18-3-102, 18-3-103, 2021 Colo. Sess. Laws 235-36. This reclassification was the result of the General Assembly considering it unjust to mandate the harshest punishment available for someone "when the death of a person is caused by a participant without deliberation in the course of the commission of specified felony offenses." 2021 Colo. Sess. Laws at 235.

¶ 22 The General Assembly simultaneously amended section 18-1.3-401(4)(c)(I)(A) to say, "If the felony for which the person was convicted is murder in the first degree, *as described in section 18-3-102(1)(b), as it existed prior to [September 15, 2021]*, then the district court, after holding a hearing, may sentence the person to a determinate sentence . . . ." (Emphasis added.) Sec. 4, § 18-1.3-401, 2021 Colo. Sess. Laws at 237-38. In other words, for resentencing of juveniles who received LWOP, the court is to

11

consider felony murder as it existed as a class 1 felony but nonetheless treat it differently. Likewise, section 18-1.3-401(4)(c)(I)(B) contains similar language, noting that provision applies to individuals "for which the person was convicted is *not* murder in the first degree, as described in section 18-3-102(1)(b), as it existed prior to [September 15, 2021]." 2021 Colo. Sess. Laws at 238.

¶ 23    These legislative amendments distinguish between (a) individuals who were convicted of felony murder when the death of a person was caused *without* deliberation and (b) individuals convicted of *deliberate* murder. Vigil was convicted of after deliberation murder. Although his felony murder conviction was previously classified as first degree murder, this does not change the fact that these are two separate crimes and one must merge into the other because there was a single victim. His interpretation of the statute that felony murder and after deliberation murder are interchangeable is contrary to the legislative intent; instead, the former may receive a determinate sentence (with proof of mitigating circumstances), whereas the latter may not.

¶ 24    Fifth and finally, the Attorney General contends, and we agree, that nothing in *Miller* or the post-*Miller* sentencing scheme suggests that maximizing the sentence for a juvenile is inappropriate or unconstitutional.  Even though the juvenile justice system is primarily intended to be rehabilitative instead of punitive, this does not mean that we should not effectuate a jury's verdict, especially when Vigil has not cited, nor are we aware of, any Colorado authority that treats multiplicity issues differently in the juvenile system.

IV.    Conclusion

¶ 25    The sentence is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.